UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CATHERINE I. EJIMADU,

        Plaintiff,

   -v-

CITY OF ROCHESTER, OFFICERS
JOHN/JANE DOES # 1-100,
`
        Defendants.
_____

**DECISION AND ORDER**

6:21-CV-6544 EAW

## INTRODUCTION

Plaintiff Catherine Ejimadu ("Plaintiff") filed this action seeking relief pursuant to 42 U.S.C. § 1983, alleging that Rochester Police Department ("RPD")[1] officers violated her constitutional rights when they deployed pepper spray, tear gas, and rubber bullets during a demonstration Plaintiff attended, and that the City of Rochester (the "City") is liable for the officers' actions under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 438 U.S. 536 (1978). (Dkt. 7).

---

[1] Plaintiff removed RPD as a defendant in the caption of her amended complaint (which is the operative pleading in this matter), but has referred to the RPD as a defendant within the body thereof. (*See* Dkt. 7 at ¶ 4; *compare* Dkt. 1 at 1, *with* Dkt. 7 at 1). However, RPD "is an administrative arm of the municipal corporation" and "because it does not exist separate and apart from the municipality and does not have its own legal identity, a police department cannot sue or be sued." *Solomon v. City of Rochester*, 449 F. Supp. 3d 104, 110 (W.D.N.Y. 2020) (citation and alteration omitted). Accordingly, to the extent there is any ambiguity, the Court does not construe the amended complaint as asserting any claims against the RPD as a defendant existing separately from the City of Rochester.

Presently before the Court is a partial motion to dismiss Plaintiff's claims for failure to intervene, false imprisonment, and negligent infliction of emotional distress and to dismiss the City as a Defendant, filed by the City and Officers John and Jane Does 1-100 (the "Doe Officers") (collectively "Defendants") on December 23, 2021. (Dkt. 8). For the reasons set forth below, Defendants' partial motion to dismiss is granted in part and denied in part.

## BACKGROUND

### I. Factual Background

The following facts are taken from the amended complaint and are presumed true at this stage. On or about May 30, 2020, Plaintiff attended a protest that occurred in the vicinity of RPD headquarters. (Dkt. 7 at ¶ 13). In the course of the protest, Plaintiff "calmly and peacefully" chanted "[b]lack [l]ives [m]atter." (*Id.* at ¶ 14). "Without provocation or warning," RPD officers deployed tear gas, pepper spray, and rubber bullets in the protesters' direction. (*Id.* at ¶¶ 15, 16). The rubber bullets struck Plaintiff in the chest, back, and legs. (*Id.* at ¶ 16). Other officers in the vicinity did not intervene to stop the use of these measures. (*Id.* at ¶ 17). Due to the tear gas and pepper spray, Plaintiff experienced difficulty breathing. (*Id.* at ¶ 18). While attempting to exit the area in order to address this issue, Plaintiff was pushed, fell to the ground, and lost her glasses. (*Id.*). She struggled to leave the area due to the placement of steel barricades. (*Id.*) Plaintiff subsequently received medical attention at Rochester General Hospital. (*Id.* at ¶ 20). The officers' conduct exacerbated her pre-existing heart condition. (*Id.*).

## II. Procedural Background

Plaintiff commenced the instant action on August 19, 2021. (Dkt. 1). On October 31, 2021, Defendants filed a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 3). On December 10, 2021, Plaintiff filed an amended complaint. (Dkt. 7).[2] On December 23, 2021, Defendants filed a partial motion to dismiss four of Plaintiff's claims. (Dkt. 8). On February 8, 2022, the Court granted Plaintiff's unopposed letter request seeking an extension of time to respond and set responses due on or before February 18, 2022, and replies due on or before February 25, 2022. (Dkt. 10). No responses or replies were submitted.

## **DISCUSSION**

### I. Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

---

[2] Plaintiff originally filed an amended complaint on December 10, 2021. (Dkt. 6) However, because this document bore the incorrect case number, Plaintiff was directed to file a corrected amended complaint, which she did on December 13, 2021. (Dkt. 7). The amended complaint at docket number 7 is the operative pleading.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

"In deciding an unopposed motion to dismiss, a court is to assume the truth of a pleading's factual allegations and test only its legal sufficiency. . . . Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Bey v. Nugent*, No. 18-CIV-7878 (PGG)(RWL), 2020 WL 6530917, at *4 (S.D.N.Y. June 3, 2020), *adopted*, No. 18-CIV-7878 (PGG)(RWL), 2020 WL 4731419 (S.D.N.Y. Aug. 14, 2020) (quotation omitted).

Defendants have moved to dismiss Plaintiff's claims for failure to intervene, false imprisonment, and negligent infliction of emotional distress and the extension of liability

- 4 -

to the City for officers' alleged constitutional violations. The Court will first address the issue of municipal liability and then will address each remaining claim in turn.

## II. Analysis

### A. Municipal Liability

Defendants seek dismissal of "Plaintiff's claim for municipal liability" for RPD officers' alleged torts, arguing that Plaintiff's allegations are conclusory and describe only one alleged incident, which is insufficient to indicate a municipal policy or custom. (Dkt. 8-6 at 5-6). The Court agrees.

As a threshold matter, although Plaintiff's amended complaint includes an independent cause of action for "(Monell) City of Rochester, Rochester Police Department, Defendant Officers" (Dkt. 7 at 4) based on an alleged failure to properly train, supervise, or discipline officers, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020). In other words, the question before the Court is whether Plaintiff has alleged facts from which a factfinder could plausibly conclude that the City caused the claimed constitutional violations. She has not, for the reasons that follow.

Although the Supreme Court has held that municipalities are persons that are amenable to suit pursuant to 42 U.S.C. § 1983, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 692. "Under the

standards of [*Monell*] a municipality can be held liable under Section 1983 if the deprivation of a plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Ameduri v. Vill. of Frankfort*, 10 F. Supp. 3d 320, 340 (N.D.N.Y. 2014).

To set forth a viable claim against a municipality pursuant to *Monell*, a plaintiff "cannot merely allege the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.' Put another way, conclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015) (quoting *Santos v. N.Y.C.*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)); *see also Montero v. City of Yonkers*, 890 F.3d 386, 403-04 (2d Cir. 2018) ("[T]he mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (quotation omitted); *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 78 (E.D.N.Y. 2015) (conclusory allegations of a municipal policy or custom "cannot even survive a motion to dismiss, let alone summary judgment").

Here Plaintiff alleges, in conclusory fashion, that the City breached its duty to train, supervise, and discipline officers by:

> a. Improperly training, authorizing, encouraging, or directing officers on proper use of force.
> b. Failing to investigate allegations of excessive force.
> c. Failing to discipline officers for violations of policy related to excessive force.

> d. The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned, as evidenced by the conduct of DEFENDANT OFFICERS and DEFENDANTS' failure to train, supervise, investigate, and discipline any of the officers involved in this incident amounting in a deliberate indifference to Plaintiff's constitutional rights.

(Dkt. 7 at ¶ 30). Plaintiff further alleges that Defendants, "[u]pon information and belief, . . . have routinely injured protesters, before and after Plaintiff's injury took place, even injuring other protestors in the demonstration that is the subject matter of this lawsuit." (*Id.* at ¶ 33). This is the extent of any allegations against the City, and they are purely conclusory. Plaintiff does not allege any facts that would support an inference that any constitutionally violative policy, custom, or usage exists. Therefore, the allegations set forth in the amended complaint are insufficient to plausibly allege municipal liability on the part of the City.

Moreover, the Supreme Court has repeatedly cautioned that single instances of unconstitutional conduct are insufficient to establish liability against a municipality under *Monell*. *See, e.g.*, *City of Okla. City. v. Tuttle*, 471 U.S. 808, 823-34 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 399 (1989) ("Allowing an inadequate training claim such as this one to go to the jury based upon a single incident would only invite jury nullification of *Monell*.") (O'Connor, J., concurring in part). Plaintiff does not present any non-conclusory allegations that would support an inference that force against protesters occurred in any other instance or that such conduct

- 7 -

was a city custom or policy or was attributable to a City policymaker. Without more than these conclusory allegations, Plaintiff has not presented sufficient material to support a municipal liability claim under *Monell*.³ Accordingly, to the extent that Plaintiff seeks to assert liability for officers' conduct against the City, such claims are not sufficiently supported with non-conclusory allegations, and the City is terminated as a defendant.

### B. Failure to Intervene

Defendants seek to dismiss Plaintiff's claim that RPD officers failed to intervene to protect Plaintiff against other officers, arguing that a claim for excessive force and a claim for failure to intervene cannot lie against the same officers for the same conduct and that the facts set forth in the complaint describe a physically impossible situation. (Dkt. 8-6 at 7-8). Although Plaintiff's allegations are a model of neither clarity nor detail, drawing all reasonable inferences in her favor, they are sufficient to state a claim that officers failed to intervene to halt other officers' use of force.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.

---

³   To be clear, the Court's analysis is limited to the allegations presented in the amended complaint, and the Court expresses no view on whether any individual injured during the demonstration at issue may assert a viable claim against the City. Further, in the event Plaintiff uncovers new evidence to support a municipal liability theory during the course of discovery, she may attempt to seek reinstatement of her claims against the City. *See, e.g., In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 386 (S.D.N.Y. 2007), *aff'd sub nom. Pub. Emps. Ret. Ass'n of New Mexico v. PricewaterhouseCoopers LLP*, 305 F. App'x 742 (2d Cir. 2009).

1994). Therefore, "liability attaches where (1) the officer had a realistic opportunity to intervene to prevent the harm; (2) a reasonable person in the officer's position would have known that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene." *Gochnour v. Burri*, No. 6:15-CV-06174, 2018 WL 10944594, at *3 (W.D.N.Y. July 9, 2018).

Defendants state that the amended complaint does not allege that "bystander" officers were present or that such officers did not have a realistic opportunity to intervene. (Dkt. 3-3 at 5). However, the amended complaint precisely alleges that "bystander" officers were present and were located within close proximity to other officers. (Dkt. 7 at ¶ 43). Although Defendants interpret the amended complaint to convey that approximately 100 officers "were all packed within 3 feet of plaintiff" (Dkt. 8 at 7 (quoting (Dkt. 7 at ¶ 17))), such an interpretation is not reasonable. Plaintiff's allegations regarding the location of any bystander officers relative to other officers are sparse. However, because the Court draws all reasonable inferences in Plaintiff's favor at the motion to dismiss stage, the Court interprets Plaintiff's allegations as asserting that officers in a position to intervene were within three feet of other officers who allegedly violated Plaintiff's right to be free from excessive force.

Although Plaintiff does not specifically allege that any bystander officers knew or would have known that Plaintiff's constitutional rights were being violated, she has sufficiently alleged factual material that supports such an inference. *See Flannery*, 2022 WL 2356635, at *7 (permitting failure to intervene claim against RPD officers where amended complaint permitted the inference that officers "were in close proximity to the

alleged constitutional violations as they were occurring and were therefore aware of them").

Defendants argue that Plaintiff is not permitted to allege both that bystander officers exercised excessive force and failed to intervene to prevent such force. (Dkt. 8-6 at 7-8). "Plaintiff alleges multiple constitutional violations, and it is possible that a defendant directly participated in one constitutional violation while he failed to intervene in another. Moreover, '[P]laintiff is allowed to plead in the alternative' and 'the alternative claims need not be consistent.'" *Flannery*, 2022 WL 2356635, at *7 (citing *Breton v. City of N.Y.*, 404 F. Supp. 3d 799, 814 (S.D.N.Y. 2019)) (declining to dismiss failure to intervene claim where the court determined "it is possible that a defendant directly participated in one constitutional violation while he failed to intervene in another"). Accordingly, Plaintiff has plausibly alleged a failure to intervene claim, and particularly at this stage of the proceeding, it would not be appropriate to dismiss the claim.

### C. False Imprisonment

Plaintiff asserts three claims under the heading of a fourth cause of action: assault, battery, and false imprisonment. (Dkt. 7 at ¶¶ 45-53). Of these claims, Defendants move to dismiss only Plaintiff's claim for false imprisonment on the basis that she has failed to state a claim on which relief can be granted. (Dkt. 8 at 8).

A § 1983 claim for false arrest or imprisonment derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause. *See, e.g.*, *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995); *see also Iverson v. Annucci*, No. 18-CV-0886-LJV, 2020 WL 1083152, at *6 (W.D.N.Y. Feb.

28, 2020) ("A section 1983 claim for false imprisonment is anchored in the Fourth Amendment right 'to be free from unreasonable seizures.'") (citing *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007)). "Claims for false arrest, whether brought under § 1983 . . . or under state law, are analyzed pursuant to the same standards as the applicable state law's false arrest tort." *Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015) (summary order). "Under New York law, false arrest is considered to be a species of false imprisonment, and the two claims have identical elements." *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000). In particular, a plaintiff claiming false arrest or false imprisonment must show "that (1) the defendant intended to confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Nzegwu*, 605 F. App'x at 29 (citation and quotation omitted). "If an officer has probable cause to arrest, the confinement is privileged." *Id.* (citation omitted).

Defendants argue that Plaintiff does not allege that RPD officers detained or intended to detain Plaintiff. (Dkt. 8-6 at 8). Instead, Defendants argue, officers sought to disperse protesters including Plaintiff. (*Id.*). Although the Court must draw all reasonable inferences in Plaintiff's favor, the amended complaint does not allege facts that would support an inference that Defendants attempted to confine Plaintiff. Plaintiff alleges that officers "confined her intentionally by the use of pepper spray, tear gas and rubber bullets intentionally and without consent." (Dkt. 7 at ¶ 50). However, no facts alleged in the amended complaint indicate that any Defendant sought to confine her. Plaintiff does not, for example, allege that any officers sought to restrain her or restrict her movement in any

way. She simply states, in conclusory fashion, that she was incapacitated by the officers' use of force. (*Id.* at ¶ 51).

Plaintiff further alleges that, after RPD officers deployed tear gas and pepper spray, they used steel barricades to "push protestors[.]" (Dkt. 7 at ¶ 18). Although Plaintiff does not specifically allege that this conduct underlies her false imprisonment claim, even considering this allegation, Plaintiff has not set forth sufficient facts to support an inference that any defendant sought to confine her. In other words, Plaintiff's allegations are that she was unlawfully dispersed from a peaceful protest—not that she was confined in an unlawful manner.

Accordingly, Plaintiff's claim for false imprisonment is dismissed.

### D. Negligent Infliction of Emotional Distress

A cause of action for negligent infliction of emotional distress requires a plaintiff "to show a breach of duty owed to [him or] her which unreasonably endangered [his or] her physical safety, or caused [him or] her to fear for [his or] her own safety." *A.M.P. v. Benjamin*, 201 A.D.3d 50, 2021 WL 5496954, at *3 (3d Dep't 2021) (alterations in original) (citation and quotation omitted). But "[u]nder New York law, claims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'" *C.Q. v. Est. of Rockefeller*, No. 20-CV-2205 (VSB), 2021 WL 4942802, at *4 (S.D.N.Y. Oct. 21, 2021) (quoting *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015)). In similar cases, courts have concluded that claims for negligent infliction of emotional distress are duplicative of assault and battery claims and dismissed the negligent infliction of emotional distress claims. *See Casaccia v. City*

*of Rochester,* No. 6:17-cv-06323-MAT, 2018 WL 324420, at *8 (W.D.N.Y. Jan. 8, 2018) ("In this case, the conduct that gives rise to Plaintiff's excessive force and assault and battery claims is also the conduct on which his negligent infliction of emotional distress claim relies, and that claim therefore must be dismissed."), *see also Fraser v. City of N.Y.*, 20-CV-5741 (NGG) (RER), 2022 WL 3045524, at *5 (E.D.N.Y. Aug. 1, 2022) (dismissing negligent infliction of emotional distress claim where it arose "out of the same facts and circumstances as [the plaintiff's] claim for assault and battery"). So too, here, does Plaintiff's claim for negligent infliction of emotional distress arise out of the same facts and circumstances as Plaintiff's assault and battery, and Plaintiff's failure to respond to the motion to dismiss means that she has offered no further basis for allowing that claim to proceed. Accordingly, Plaintiff's claim for negligent infliction of emotional distress is dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss (Dkt. 12) is granted in part and denied in part. Plaintiff's claims for false imprisonment and negligent infliction of emotional distress are dismissed, and the Clerk of Court is directed to terminate the City of Rochester as a defendant.

- 14 -

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

DATED: September 7, 2022
            Rochester, New York